FOR PUBLICATION
UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
----------------------------------------------------------------x

In re:

Jacob P. Surma, Jr.,                                                  Chapter 11

                                              Debtor.                     Case No.: 11-37991 (MBK)

----------------------------------------------------------------x

**APPEARANCES:**

David E. Shaver, Esq.
Broege, Neumann, Fisher, & Shaver, LLC
25 Abe Voorhees Drive
Manasquan, NJ 08736
*Attorney for Jacob P. Surma, Jr.*

Jeffrey M. Sponder, Esq.
Office of the U.S. Trustee
One Newark Center
Newark, New Jersey 07102
*Attorney for the Office of the U.S. Trustee*

William M.E. Powers, III, Esq.
Powers Kirn, LLC.
728 Marne Highway
P.O. Box 848
Moorestown, NJ 08057
*Attorney for SunTrust Mortgage, Inc.*

**MICHAEL B. KAPLAN, U.S.B.J.**

**OPINION**

**I.    INTRODUCTION**

This matter comes before the Court by way of SunTrust Mortgage, Inc.'s ("SunTrust") objection to Jacob P. Surma's ("Surma" or "Debtor") First Modified Chapter 11 Plan ("Plan") and Disclosure Statement. The issue before the Court is how, if at all, the rents assigned by the

Debtor under a pre-petition absolute assignment of rents to SunTrust may be used pursuant to a proposed plan of reorganization. As discussed below, the Court determines that the Debtor may not use or allocate the rents under his Plan and thus the Court denies approval of the Disclosure Statement.

## II.   JURISDICTION

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended October 17, 2013, referring all bankruptcy cases to the bankruptcy court.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(L).  Venue is proper in this Court pursuant to 28 U.S.C. § 1408.  Pursuant to Fed. R. Bank. P. 7052, the Court issues the following findings of fact and conclusions of law.[1]

## III.   BACKGROUND

Debtor owns a multifamily home located at 904 Bergh Street, Asbury Park, New Jersey ("Property"), which Property is encumbered by two mortgages held by SunTrust -- a first mortgage in the original amount of $375,200, and a second mortgage in the amount of $93,800. Debtor resides in one of three separate apartments in the Property and rents out the other units.

On October 30, 2006, Debtor executed and delivered a uniform Fannie Mae/Freddie Mac Mortgage Instrument ("Mortgage Instrument") to SunTrust, which contained a 1-4 Family Rider ("Assignment of Rents") wherein Debtor absolutely and unconditionally assigned the rents covering the Property.  On June 1, 2008, Debtor defaulted on payments to SunTrust and the loan has remained continuously in default.

---

[1] To the extent that any of the findings of fact may constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

2

On October 9, 2008, SunTrust commenced a foreclosure proceeding in the Superior Court of New Jersey, Chancery Division, Monmouth County (Docket No. F-39953-08). A sheriff's sale was scheduled for April 26, 2010. Upon the exercise of Debtor's two statutory adjournments, the April 26, 2010 sheriff's sale was rescheduled to May 24, 2010.

On May 21, 2010, Debtor filed for Chapter 13 bankruptcy relief (Case No. 10-25598-MBK) ("First Chapter 13") in order to stay the May 24, 2010 sheriff's sale. At the time of the filing, Debtor owed arrearages to SunTrust in the amount of $124,707.89. Thereafter, SunTrust filed a motion with the Court for relief from the automatic stay on the basis of the Debtor's material default in post-petition mortgage payments. On May 12, 2011, the First Chapter 13 was dismissed, prior to confirmation, for lack of prosecution and failure to file an amended plan. As a result, SunTrust's motion for relief from the automatic stay was deemed moot. During the pendency of the Chapter 13 case, the Court allowed Debtor to use the rents, on an interim basis, for purposes of making required adequate protection payments, and provided for relief to SunTrust upon further event of default.

Upon dismissal of the First Chapter 13, SunTrust continued with the foreclosure action and a sheriff's sale on the property was scheduled for September 26, 2011.[2] The sheriff's sale caused the Debtor to file another Chapter 13 bankruptcy case (Case No. 11-37991-MBK) ("Second Chapter 13") on September 26, 2011. In the Debtor's Chapter 13 plan, filed in the Second Chapter 13 case, he proposed to use his regular income from work, as well as the $2,500 in monthly rental income, to satisfy SunTrust's secured claim by stripping off the second mortgage and amortizing the allowed bifurcated secured claim (determined under 11 U.S.C §

---

[2] SunTrust's counsel states in his "Certification in Support of a Motion for an Order Enforcing Assignment of Rents, Requiring Production of Accounting and Turnover of Rents and Excluding Said Rents from Debtor's Estate" (Docket No. 46) that the date of the rescheduled sheriff's sale was set for October 17, 2011. However, the Court notes that the Debtor's papers reflect that the rescheduled sheriff's sale was set for September 26, 2011.

3

506(a)) on a 30 year amortization schedule; the Chapter 13 plan further provided for a proposed a balloon payment of the balance of SunTrust's claim in the 59th month of the Plan.

SunTrust filed a detailed objection to Debtor's Chapter 13 Plan and requested denial of confirmation. On February 27, 2012, Debtor submitted a brief responding to SunTrust's objection to confirmation. Debtor argued that the first mortgage of SunTrust is modifiable and that SunTrust does not have an absolute and unconditional assignment of the rents. The Debtor then sought to adjourn confirmation in an effort to negotiate a loan modification on the first mortgage that would erase the pre-petition arrears, reduce the unpaid principal balance, and lower the interest rate so that the monthly rents derived from the property would cover the debt service.

On May 7, 2012, SunTrust filed a Motion Seeking to Enforce its Assignment of Rents. The Court conducted a conference call on the issue on June 6, 2012, at which time the Court narrowed the issue to whether SunTrust's claim is modifiable and therefore subject to bifurcation and, if so, whether the rents are subject to *In re Jason Realty, L.P.*, 59 F.3d 423 (3d Cir. 1995). The matter was rescheduled for oral argument on July 9, 2012 and, on July 26, 2012, the Court entered an Order Denying Confirmation and Enforcing Assignment of Rents, Requiring Production of Accounting, and Turnover of Rents.

The Chapter 13 Trustee filed a Motion to Dismiss the Second Chapter 13 on August 30, 2012, which the Court granted on October 17, 2012, prompting Debtor to file a Motion to Vacate the Dismissal, Reinstate the Case, and Convert the Case to a Chapter 11. The Court granted the Debtor's motion and the case proceeded under Chapter 11, with the Debtor filing a Chapter 11 plan (subsequently modified) and Disclosure Statement. As in his Chapter 13 case, the Debtor's Plan seeks to bifurcate the SunTrust secured claim and to apply the rents from the Property

4

towards the secured portion of the claim. SunTrust subsequently filed an opposition to the Chapter 11 Plan and Disclosure Statement.

Debtor is employed on a full time basis as an electrician for Nice Electric in Belmar, earning approximately $52,000 per year. When Debtor filed the First Chapter 13 petition, neither of the two rental units were fully completed and renovated. During the pendency of the First Chapter 13, however, Debtor completed the renovation of the second floor unit and obtained a tenant. Debtor collects a total of $2,500 per month in rent according to Schedule "I" of the Debtor's bankruptcy petition.

The Debtor submits that the property has a fair market value of approximately $250,000, and proposes to satisfy the secured claim of SunTrust, crammed down to the fair market value of the Property. Debtor asserts that there is no value in the Property to which the second mortgage held by SunTrust could attach, and thus the balance of the Sun Trust claim is to be treated under the Plan as a general unsecured claim. As such, the Debtor seeks approval of the proposed Disclosure Statement and Plan.

## IV.   DISCUSSION

As indicated, the issue facing the Court is whether Debtor's use or application of the rents in his proposed Chapter 11 Plan is permissible in light of the restrictions outlined in *Jason Realty*, absent Sun Trust's consent. In this regard, Sun Trust objects to the Debtor's proposed application of the rents against the secured portion of the bifurcated claim, and argues that it maintains the right to apply the rents against any unsecured deficiency. With respect to a hearing on the adequacy of a disclosure statement, this Court is charged with the responsibility to evaluate whether the Debtor's plan is patently unconfirmable as a matter of law. It is within the Court's discretion to deny approval of a disclosure statement if the accompanying plan is

5

unconfirmable on its face. *See In re American Capital Equipment, LLC,* 688 F.3d 145, 154 (3d Cir. Pa. 2012).

The Third Circuit in *Jason Realty* examined the language of an absolute assignment of rents, as part of commercial mortgage financing, and concluded that, notwithstanding its role as part of a financing transaction and as additional security for repayment of the note, the assignment was an absolute assignment that had transferred title to the assignee upon execution. *Id.* at 428-29. As such, the debtor no longer retained an interest in the rents and the rents were not property of the estate. *Id.* In making that determination, the Third Circuit first examined the relationship between federal bankruptcy law and New Jersey property law.

Specifically, the Circuit noted that "assignments of rents are interests in real property and, as such, are created and defined in accordance with the law of the situs of the real property." *Id*. at 427 (*citing Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979); *Commerce Bank v. Mountain View Village, Inc.*, 5 F.3d 34, 37 (3d Cir. 1993)). "A federal court in bankruptcy is not allowed to upend the property law of the state in which it sits, for to do so would encourage forum shopping and allow a party to receive 'a windfall merely by reason of the happenstance of bankruptcy.'" *Id*. (*citing Butner*, 440 U.S. at 55, 99 S.Ct. at 918). Instead, bankruptcy courts must "afford … [creditors] the same protection [they] would have under state law if no bankruptcy had ensued." *Id*. Therefore, because "assignments of rent are interests in real property," the Court looked to New Jersey property law to classify the parties' interests in the rents. *Id*.

Looking to New Jersey law, *Jason Realty* explained that "it is settled in New Jersey that an assignment of rents passes title to the assignee." *Id*. (*citing Paramount Bldg. & Loan Ass'n of City of Newark v. Sacks*, 107 N.J.Eq. 328, 152 A. 457 (N.J. Ch. 1930). "An absolute

assignment transfers title to the assignee upon its execution." *Id*. (*citing New Jersey Nat'l Bank & Trust Co. v. Wolf*, 108 N.J.Eq. 412, 155 A. 372 (N.J. Ch. 1931)). "An assignment is absolute if its language demonstrates an intent to transfer immediately the assignor's rights and title to the rents." *Id*. (*citing In re Winslow Center Assocs.*, 50 B.R. 679, 681-82 (Bankr.E.D.Pa. 1985)). The court found that the assignment language was quintessentially absolute because the parties mutually agreed, in words of the present, to transfer full title to the rents. Such an exchange "inescapably and unambiguously expressed an agreement to assign present title." *Id*. As such, the *Jason Realty* court concluded that the rents were assigned to First Fidelity and were not property of the bankruptcy estate. *Id*. at 428. Accordingly, the rents were not available as a funding source for the debtor's reorganization plan. *Id*.

Critically important for resolution of the issues in this matter, the Third Circuit mandated that such rents are *"unavailable for use, allocation or utilization in any plan"* (emphasis added). *Id*. at 43. Here, the Debtor argues that by applying all of the rents towards the secured claim, he is not utilizing the rents as proscribed by the Third Circuit in *Jason Realty*. This Court would agree with the Debtor's position if his plan did not include bifurcation of SunTrust's secured claim and the rents were to be applied against the entire claim. Yet, the Debtor seeks to compel SunTrust to apply the rents against the reduced secured claim, leaving SunTrust unable to make use of the rents to satisfy its unsecured deficiency. It seems palpably clear that the Debtor is attempting under his Plan to coerce SunTrust into *allocating* the rents in a fashion which is prejudicial to SunTrust's economic interests. This effort contravenes the mandate of *Jason Realty*. Indeed, one wonders what benefit there would be to having an assignment of rents, constituting independent and separate collateral, if the lender were restricted as to the manner it

could apply the rents. Under the Debtor's Plan, the retention of an absolute assignment of rents would offer little value to SunTrust and certainly not the benefit for which SunTrust bargained.[3]

In support of its position, the Debtor primarily relies on Judge Stern's recent opinion on a similar issue in the context of a Chapter 13 proceeding. In *In re Parks*, 2012 Bankr. LEXIS 5758 (Bankr. Div. 2012), following an absolute assignment of rents executed in conjunction with a mortgage and note, debtor defaulted on her monthly payment obligation. At risk of foreclosure of her interest in a two-family house (one unit owner occupied, the other generating rent), debtor filed a Chapter 13 petition in bankruptcy. Her plan of rehabilitation was, *inter alia*, to make monthly plan payments of income and family contributions, while *both using and taking a plan credit for* the assigned rent in meeting her proposed plan to pay a "cram-down" amount on her note debt. The debtor and her mortgagee/assignee differed somewhat on the debt amount due on the mortgage note (The debtor asserted a $362,846 amount while the creditor claimed $393,683). The partially secured creditor objected to its treatment in the plan and to the plan's confirmation, asserting (among a number of objections) that the absolute assignment of rents denied the debtor access to the rents for plan funding purposes.

Judge Stern framed the issue as follows:

> Is the lien avoidance of § 506(d) such that the absolute assignment of rents, to the extent of any net proceeds, would be credited solely to the allowed secured mortgage amount of $180,000? Or, as the creditor would have it, are such rent proceeds attributable to the total debt (with "first" credit dollars to be paid against the portion of the debt not allowed as secured debt per § 506(d)?

*In re Parks*, 2012 Bankr. LEXIS at *4. Judge Stern resolved the issue in favor of the debtor, based upon his application and reading of § 506(d) which provides:

---

[3] While at the hearing on the adequacy of the Disclosure Statement, the Court questioned Debtor's counsel as to the impact of an §1111(b) election (in which SunTrust's claim would be treated as fully secured) with respect to the Plan. The Court need not address this issue in light of the Court's decision to deny approval of the Disclosure Statement.

>(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless–
>
>(1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or
>
>(2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

11 U.S.C. § 506(d).

Cognizant of the interplay between §§ 506(a) and 506(d), and noting that a lien is to be avoided to the extent it would endeavor to secure a claim which is not supported by collateral value, Judge Stern held that § 506(d) requires avoidance of both the mortgage lien *and* the assignment of rents to the extent both interests are not supported by the value of the collateral. *Id.* Judge Stern further ruled that "[S]ince the federal override of applicable New Jersey law per *§ 506(d)* allows only the cram-down amount as "the sum secured by the security instrument," future rent credits of net proceeds (if any) must be applied only to the cram-down amount (including appropriate interest). This conclusion is consistent with § 506(b), as well as § 506(d), and comports with the essence of *United Sav. Ass'n v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 108 S. Ct. 626, 98 L. Ed. 2d 740 (1988)." *Id.*

Respectfully, this Court disagrees with Judge Stern's premise that § 506(d) dictates the resolution of this issue. Section 506(d) is not a lien modification mechanism and comes into play only when the underlying claim has been disallowed. In *Dewsnup v. Timm*, 502 U.S. 410, 112 S. Ct. 773, 116 L.Ed. 2d 228 (1993), the U.S. Supreme Court concluded that under § 506(d), a claim qualifies as an "allowed secured claim" if it is allowed as a claim and if the claim is secured, in the sense that the creditor holds a security interest in the collateral. As noted recently

9

by Judge Wizmur in *In re Cook,* 432 B.R. 519 (Bankr. D. N.J. 2010) (*aff'd* 449 B.R. 664 (D. N.J. 2011):

> Dewsnup thus draws a distinction between an "allowed secured claim" for purposes of § 506(a) and an "allowed secured claim" as used in § 506(d)… A claim is secured for purposes of § 506(a) to the extent of the value of the associated collateral. Under Dewsnup, an allowed claim is secured for purposes of § 506(d) simply because the claim is subject to a lien with recourse to collateral. Valuation is not a factor in the determination.

In this matter, § 506(d) is inapplicable inasmuch as Sun Trust's secured claim has not been disallowed. Rather, Sun Trust has an allowed claim, secured by real estate. Given the inapplicability of § 506(d), there is no federal override of Sun Trust's property interest in the assigned rents under New Jersey law.

Further support for the Court's decision to proscribe the Debtor's allocation of rents may be found in the Third Circuit's decision in *First Fidelity Bank v. McAteer*, 985 F.2d 114 (3d Cir. 1993). In *McAteer*, the debtor confirmed a plan which provided for a cram-down of the secured creditor's claim. The creditor was named as the beneficiary under a life insurance policy owned by the debtor. Thereafter, the debtor passed away and the bankruptcy estate sought turnover of life insurance proceeds. The bankruptcy court granted the request of the debtor's estate and ordered all proceeds in excess of the allowed secured claim be turned over to the debtor's estate. The District Court affirmed the decision; however, the Third Circuit reversed, finding that the creditor was the primary beneficiary under the policy and held rights which were unalterable under the plan. *McAteer,* 985 F.3d at 118. "While it is true that the bankruptcy court's confirmation of the plan binds the debtor and all creditors *vis-à-vis* the debtor, it does not follow that a discharge in bankruptcy alters the rights of a creditor to collect from third parties." *Id.*

As recognized by the Third Circuit in *Jason Realty*, an assignment of a right is a manifestation of the assignor's intention to transfer it by virtue of which the assignor's right to performance by the obligor is extinguished in whole or in part and the assignee acquires right to such performance. *Restatement (Second) of Contracts § 317. Jason Realty*, 59 F.3d at 427 (*citing Aronsohn v. Mandara, 98 N.J. 92, 484 A.2d 675, 678-79 (N.J. 1984))*. Just as the secured party in *McAteer* held an unalterable contractual right to the life insurance proceeds, the Debtor has transferred, and SunTrust has acquired, the inviolate right to payment performance by the Debtor's tenants.

V.   **CONCLUSION**

For the forgoing reasons, the Court determines that the Debtor's Plan, presently bottomed on the use and allocation of previously assigned rents, contravenes the dictates of the Third Circuit's decision in *Jason Realty*, and thus is patently unconfirmable. The Court will not approve the Debtor's Disclosure Statement which accompanies the Plan.

Honorable Michael B. Kaplan
United States Bankruptcy Judge

Dated: February 4, 2014